Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Boulevard, South
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Proposed Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | ) CASE NO.: 17-12099-ABL |
| | ) |
| HelioPower, Inc., | ) Chapter 11 |
| | ) |
| Debtor. | ) Interim Hearing Date: OST Pending |
| | ) Interim Hearing Time: OST Pending |

**MOTION FOR AN ORDER:  (I) AUTHORIZING SECURED POST-PETITION FINANCING; (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III) APPROVING LOAN DOCUMENTS RELATING TO THE FOREGOING; (IV) GRANTING RELIEF FROM THE AUTOMATIC STAY; AND (V) GRANTING OTHER RELATED RELIEF**

HelioPower, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its proposed counsel of record, Schwartz Flansburg, PLLC, hereby moves (the "**Motion**") the Court for the entry of an order authorizing the Debtor to obtain post-petition financing pursuant to sections 105, 361, 362, and 364 of title 11 of United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), and approving the Motion in accordance with Rules 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  In support of this Motion, and the entry of interim and final order, the Debtor relies upon and refers this Court to the Declaration of Maurice Rousso (the "**Rousso Declaration**"), filed concurrently herewith, and respectfully states as follows:

1

4837-1874-7975, v. 1

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. On April 25, 2017 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtor continues to operate its business and manage its properties as a debtor-in-possession. No creditor's committee has been appointed in this case by the United States Trustee.

4. The Debtor is a solar energy company and energy solutions to residential and commercial customers, with over 5,000 solar and clean energy systems engineered and installed since 2001. The Debtor reduces energy costs and develops energy assets by leveraging renewable energy production, demand side management and return on investment strategies for clients in the United States.

5. Importantly, the Debtor's current revenues and cash flow do not allow it to meet its current expense obligations to continue running the business. As there is often times a 60-90 lag between the time work is performed by the Debtor and the time cash is received for the work performed, the Debtor needs post-petition financing to bridge this gap and to ensure that the Debtor remains current on the necessary expenses to operate the Debtor's business.

**The DIP Lender**

6. Over the past several years, Sierra Nevada Solar, Inc. ("**SNS**" or the "**DIP Lender**") has provided various loans to the Debtor in a cumulative amount of $2,636,716.31.

2

4837-1874-7975, v. 1

Beginning on January 1, 2017, SNS began providing additional loans to the Debtor, on a secured basis, in order to allow the Debtor to make its payroll obligations. Between January 1, 2017, and the Petition Date, SNS loaned the Debtor $182,218.00, which was all used by the Debtor for payroll obligations.

7. Following extensive negotiations, SNS agreed to loan the Debtor, in the form of a revolving, secured post-petition line of credit (the "**DIP Financing**"), up to a maximum of $582,218.00 (which includes $182,218.00 in payroll advances since January 1, 2017). The DIP Financing is evidenced by: (i) debtor in possession credit agreement (the "**DIP Loan Agreement**"); and (ii) a postpetition security agreement (the "**Security Agreement**" and collectively with the DIP Loan Agreement, the "**DIP Loan Documents**"), copies of which are attached hereto as **Exhibit A**. The proposed uses of the DIP Financing are set forth in that certain budget (the "**Budget**"), attached hereto as **Exhibit B**.

8. Because the Debtor is not yet generating sufficient revenue to pay its ongoing post-petition expenses and the existing cash on hand will not be sufficient to fund payroll and other necessary post-petition obligations, the Debtor concluded that obtaining a firm commitment for post-petition financing at this state of the Chapter 11 Case is necessary and in the best interests of its estate.

9. The Debtor intends to use the DIP Financing and its cash collateral to, among other things, make ongoing payments to run its business as set forth in the Budget, including the payment of rent, insurance, utilities, staff, accounting, and expenses associated with materials and installation of solar products.

10. The Debtor's access to sufficient working capital and liquidity through the use of cash collateral and the incurrence of new indebtedness for borrowed money is vital to the

ongoing business operations of the Debtor. Due to the current state of the credit markets generally, and the general state of the solar industry, the Debtor believes that it will be unable to obtain post-petition financing in the form of unsecured credit allowable as an administrative expense under section 503(b)(l) of the Bankruptcy Code or unsecured credit allowable under sections 364(a) and (b) of the Bankruptcy Code.

11. The Debtor therefore determined, in the exercise of its business judgment, that the proposal for the DIP Financing provided by the DIP Lender is the most favorable under the current circumstances and addresses the Debtor's working capital needs. The Debtor does not believe that it could obtain proposals for post-petition financing on terms and conditions more favorable to the Debtor's estates than those proposed herein.

12. The DIP Lender is willing to make the DIP Financing available to the Debtor upon the terms and conditions set forth in the DIP Loan Documents. The pertinent provisions of the proposed DIP Financing, as set forth in the DIP Loan Documents, are as follows: [1]

 a. Borrower: HelioPower, Inc., as debtor-in-possession.

 b. DIP Lender: Sierra Nevada Solar, Inc.

 c. The Facility: Post-petition revolving credit up to a maximum principal amount of $582,218.00, of which $182,218.00 was advanced prior to the filing of the Chapter 11 case, and represents payroll advances since January 1, 2017 (the "**Prior Advances**").

 d. Purpose: Short-term working capital.

 e. Availability: Advances shall be available immediately upon entry of the Order

---

[1] The following description of the terms of the DIP Financing is intended solely to provide the Court and interested parties with a brief overview of the significant terms thereof. For a complete description of the terms and conditions of the DIP Financing, reference should be made to the DIP Loan Documents. This summary is qualified in its entirety by reference to the DIP Loan Documents. In the event of any conflict or inconsistency between the provisions of this Motion and the DIP Loan Documents, the orders of this Court shall control in all respects, and then the DIP Loan Documents.

4837-1874-7975, v. 1

approving this Motion, in the full amount of the note, and as needed by the Debtor, and subject to the inclusion of the Prior Advances.

f. <u>Financial Terms</u>: All advances shall bear interest at a rate of ten percent (10.0%) per annum.

g. <u>Fees</u>: If Lender is required to bring any action or proceeding against any other party for any cause dependent hereon or arising hereunder or connected herewith, the Lender shall recover its attorneys' and professionals' fees and costs and expenses in connection therewith. Specifically, and without limitation, DIP Lender shall also recover from the Debtor the attorneys' and accountants' fees and legal expenses incurred in exercising its rights following any default by Debtor.

h. <u>Maturity Date</u>: On the sooner to occur of (i) September 15, 2017; (ii) the occurrence of an Event of Default, or (iii) the date on which the loan is paid in full and the Debtor has no further obligations to the DIP Lender.

i. <u>Collateral</u>: All assets of the Debtor.

j. <u>Priority and Liens</u>: As collateral security for the prompt payment in full when due (whether at stated maturity, upon acceleration, on any optional or mandatory prepayment date or otherwise) and performance of the Secured Obligations, Debtor hereby pledges and grants to the Lender the following rights in the Collateral; (i) a priming first priority security interest in all of Debtor's right, title and interest in the Collateral, together with all post-petition accruals thereon; and (ii) a super priority claim in the Debtor's bankruptcy case in the amount of any outstanding principal, interest and fees in respect of the Loan having priority over all administrative expenses of the kind specified in § 105, § 326, § 328, § 330, § 331, § 503(b), § 506(c), § 507(a), § 507(b), § 546(c) and § 726 of the Bankruptcy Code.

k. <u>Perfection</u>: The creation, perfection and priority of the liens granted under and in connection with the Note shall be automatic without the necessity of the execution, delivery or recordation of any filings, registrations or other notifications by the Debtor of any security agreements, mortgages, financing statements, pledge agreements, control agreements or other similar agreements, documents or notices, provided, however, the DIP Lender shall be authorized to obtain and or file, and the Debtor shall so provide, any of the foregoing upon the request of DIP Lender in the exercise of its sole discretion.

l. <u>Purposes and Use of Proceeds and Cash Collateral</u>. The advances shall be used to fund monthly operational capital requirements of Debtor, including, but not limited to, the restructuring and reorganization costs of Debtor, the payment of administrative expenses and certain other claims and expenses as specifically set forth in the Budget.

4837-1874-7975, v. 1

m. <u>Funding Conditions</u>: Conditions for funding include (i) entry of a final order, satisfactory in form and substance to the DIP Lender, approving, granting or authorizing the transactions contemplated by the Note, the liens and the superpriority administrative claims status and the lien priorities described herein and (ii) the execution and delivery of the Note by the Debtor.

n. <u>Events of Default</u>: The Order specifies certain defaults and events of default, including, without limitation, conversion of the Chapter 11 Case to Chapter 7, appointment of a Chapter 11 trustee for the Debtor, dismissal of the Chapter 11 Case, and the Debtor's failure to make payments to DIP Lender when due.

## **Relief Requested**

13.   By this Motion, Debtor seeks authority to enter an order granting the relief as set forth in the proposed Order, attached hereto as **Exhibit C**.

## **Basis for Relief**

**Approval of DIP Financing.**

14.   As described above, it is essential to the success of the Debtor's Chapter 11 Case that the Debtor obtains access to sufficient post-petition financing. The preservation of estate assets, the Debtor's continuing viability and its ability to operate its business, thus, depend heavily upon the approval of the DIP Financing and the related actions requested herein.

15.   If a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize a debtor to obtain credit or incur debt:

a. with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

b. secured by a lien on property of the estate that is not otherwise subject to a lien; or

c. secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

4837-1874-7975, v. 1

16. The Debtor was unable to procure the required funds in the form of unsecured credit or unsecured debt with an administrative priority. In addition, the Debtor was unable to procure the required funds solely under section 364(c) of the Bankruptcy Code. The Debtor negotiated the DIP Financing at arms-length, and pursuant to Debtor's best business judgment. The terms and provisions of the DIP Financing are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtor could obtain post-petition financing. Accordingly, the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of the DIP Financing.

17. The DIP Financing will enable the Debtor to, among other things: (a) pay the necessary post-petition expenses operating its business and maintaining the value of the Debtor's business operations as a going concern; and (b) give the Debtor's vendors, suppliers, and customers the necessary confidence to continue ongoing relationships with the Debtor.

**The Debtor Does Not Have an Alternative to the DIP Loan.**

18. The Debtor believes, based on its prior discussions with institutional and noninstitutional lenders, that it could not obtain financing from any other lender on terms equally or more favorable than the DIP Loan offered by the DIP Lender, especially considering the Debtor's cash reserves are depleted. The Debtor exercised its best business judgment in negotiating the DIP Loan Documents that are presently before the Court.

19. The DIP Lender's offer to provide the DIP Loan as an administrative claim pursuant to section 364(b) and a superpriority priming lien loan pursuant to Section 364(d), in an amount necessary to meet the Debtor's working capital needs on the terms, and within the time frame provided, simply cannot, in the judgment of Debtor, be matched by any third-party lender

The DIP Lender has already performed all the due diligence necessary in connection with the DIP Loan and, thus, is well positioned to provide post-petition financing to the Debtor.

**Application of the Business Judgment Standard.**

20.     As described above, the Debtor has concluded that the DIP Loan provides the only reasonable alternative available under the circumstances.  Bankruptcy courts routinely defer to a debtor's business judgment on business decisions, including the decision to borrow money.  See Group of Inst'l Investors v. Chicago Mil. St. P. & Pac. Ry., 318 U.S. 523, 550 (1943); Ames, 115 B.R. at 38 (in examining requests for interim financing, courts apply the same business judgment standard applicable to other business decisions); see also In re Yellowstone Mountain Club, LLC, 2008 WL 5869859 (Bankr. D. Mont. Nov. 26, 2008) (acknowledging the use of the business judgment standard with respect to approval of section 364 financing).

21.     Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code."  Id. at 513-14 (footnotes omitted); see also In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same).  In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious.  See In re Curlew Valley Assoc., 14 B.R. 506, 511-13 (Bankr. D. Utah 1981).  Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts generally grant a debtor considerable deference in acting in accordance therewith.  See, e.g., In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[T]he court's discretion

under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estates as it is to benefit a party-in-interest.").

22. Approval of the DIP Loan will provide the Debtor with immediate and ongoing access to funds so that the Debtor can avoid harm to its estates and likely erosion of the value of its assets. Absent access to the DIP Loan, the Debtor will not have sufficient available sources of working capital and financing to successfully continue its business operations, and tender a distribution to the Debtor's creditors through a plan of reorganization. The funds provided under the DIP Loan will enable the Debtor to prosecute its Chapter 11 Case in an orderly and reasonable manner that preserves and enhances the value of the estate.

23. The Debtor has exercised sound business judgment in determining that the proposed DIP facility is appropriate and have satisfied the legal prerequisites to borrow under the DIP Documents. Accordingly, the Debtor should be granted authority to borrow funds from the DIP Lender pursuant to section 364 of the Bankruptcy Code, and take the other actions contemplated herein.

**The DIP Financing Is Proposed in Good Faith.**

24. Section 364(e) was designed to "encourage the extension of credit to debtors" by allowing lenders to "rely on a bankruptcy court's authorization of the transaction." In re EDC Holding Co., 676 F.2d 945, 947 (7th Cir. 1982) (the purpose of Section 364(e) is "to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting

to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge"); see also In re North Atlantic Millwork Corp., 155 B.R. 271, 279 (Bankr. D. Mass. 1993) ("The purpose of section 364(e) is to allow good faith lenders to rely upon conditions at the time they extend credit and to encourage lenders to lend to bankrupt entities.").

25. The proposed DIP Loan is the result of good faith and arm's-length negotiations, with all parties represented by counsel. The Debtor negotiated the DIP Facility solely in pursuit of the best interests of the Debtor and its estate. The Debtor believes that the terms of the DIP Loan are fair and reasonable under the circumstances, and that the DIP Lender is entitled to the benefits of section 364(e) of the Bankruptcy Code.

**Modification of the Automatic Stay.**

26. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to: (i) grant the liens as set forth herein and in the DIP Loan Agreement to the DIP Lender and to perform such acts as may be requested to assure the perfection and priority of such liens; (ii) permit the DIP Lender to exercise, in compliance with the terms of the DIP Loan Agreement, all rights and remedies under such DIP Loan Agreement; and (iii) implement the terms of the Final Order.

27. Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

**Notice**

28. Notice of this Motion has been provided to (i) all taxing authorities or recording offices which have a reasonably known interest in the Debtor, including the Internal Revenue Service; (ii) the Office of the United States Trustee for the District Nevada; (iii) all of the

4837-1874-7975, v. 1

Debtor's known creditors and interest holders; and (iv) those parties that requested notice under Bankruptcy Rule 2002.

**No Prior Request**

29.     No prior Motion for the relief requested herein has been made to this or any other Court.  The Debtor submits that no further notice or a hearing is necessary for this Court to enter an order granting the relief requested by this Motion.

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders: (i) approving the DIP Financing and the form of order attached hereto as **Exhibit C**; and (ii) granting such other relief as may be fair and equitable.

Dated this 26th day of April, 2017.

Respectfully Submitted,

/s/ Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Boulevard, South
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Proposed Attorneys for Debtor

4837-1874-7975, v. 1