Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
M. Michelle Nisce, Esq.
Nevada Bar No. 13552
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
*Proposed Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | ) Case No.: 17-12099-ABL |
| | ) |
| HelioPower, Inc., | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| _____ | ) |

STATE OF NEVADA          )
                         )          ss:
COUNTY OF CLARK          )

**DECLARATION OF MAURICE ROUSSO IN SUPPORT**
**OF BANKRUPTCY FILING AND FIRST DAY MOTIONS**

Maurice Rousso, as President and Director of HelioPower, Inc., being duly sworn, deposes and says:

1.      I am over the age of 18, mentally competent and make this declaration in support of the voluntary Chapter 11 bankruptcy filing of HelioPower, Inc. (the "**Debtor**").

2.      On April 25, 2017 (the "**Petition Date**"), the Debtor filed its voluntary petition in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "**Bankruptcy Code**").

4833-9225-7095, v. 1

3.     The Debtor is a solar energy company and energy solutions to residential and commercial customers, with over 5,000 solar and clean energy systems engineered and installed since 2001.  The Debtor reduces energy costs and develops energy assets by leveraging renewable energy production, demand side management and return on investment strategies for clients in the United States.

4.     Over the past several years, the Debtor has received loans from its parent company, Sierra Nevada Solar, Inc. ("**SNS**") in the amount of $2,636,716.31, in order to help fund the Debtor's business operations.

5.     Over the past year, the Debtor's current revenues and cash flow did not allow it to meet its current expense obligations to continue running the business. In fact, between January 1, 2017, and April 25, 2017, the Debtor borrowed an additional $182,218 from SNS, on a secured basis, in order to meet its payroll obligations.  Unfortunately, however, the Debtor's current revenues and cash flow do not allow it to meet its current expense obligations to continue running the business.  There is often times a 60-90 day lag between the time work is performed by the Debtor and the time cash is received for the work performed.  As a result of the foregoing and the Debtor's desire to continue its business operations, on the Petition Date, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.     On April 25, 2017, the Debtor filed the following first day motions and applications for its Chapter 11 case:

a.    Application for the Entry of an Order Pursuant to 11 U.S.C. §§ 327(a), 328, 329 and 331 and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure authorizing the employment and retention of Schwartz Flansburg PLLC ("**SF**") as counsel for the Debtors (the "**Retention Application**");

4833-9225-7095, v. 1

b.    Motion for the Entry of an Order under sections 363, 364, 1107 and 1108 of title 11 of the Bankruptcy Code Authorizing the Debtor to (i) Maintain Existing Bank Accounts; (ii) Continue to Use its Existing Business Forms; (iii) Continue to Use Its Existing Cash Management System; and (iv) Continue Using Existing Investment Practices (the "**Bank Accounts Motion**");

c.    Motion for an Order (i) prohibiting the Debtor's utility service providers from altering, refusing, or discontinuing services, and (ii) establishing procedures for determining requests by the utility service providers for additional adequate assurance of payment (the "**Utilities Motion**");

d.    Motion for the Entry of Interim and Final Orders Authorizing, But Not Directing, the Debtor to (i) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (ii) Pay and Honor Employee Medical and Other Benefits, and (iii) Continue Employee Wages and Benefits Programs (the "**Employee Wages Motion**"); and

e.    Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 1107 and 1108 and Rules 4001(b), 6003 and 6004 of the Federal Rules of Bankruptcy Procedure for Entry of Interim and Final Orders (A)(I) Authorizing the Use of Cash, Including Cash Collateral, (ii) Finding that the Interests of the Prepetition Lender or Any Other Purportedly Secured Party are Adequately Protected, and (III) Granting Related Relief, or (B) Alternatively, Authorizing the Debtor to Surcharge the Prepetition Collateral, and (C) Scheduling Interim and Final Hearings (the "**Cash Collateral Motion**"); and

f.    Motion for an Order: (I) Authorizing Secured Post-Petition Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Approving

4833-9225-7095, v. 1

Loan Documents relating to the foregoing (IV) Granting Relief from the Automatic Stay; and (V) Granting Other Related Relief (the "**DIP Financing Motion**");

g.    Motion for an Order Granting the Debtor's Additional Time within which to File Schedules and Statements (the "**Motion to Extend Time**").

**Retention Application**

7.    On April 6, 2017, the Debtor retained SF as its attorneys to prepare the filing of a Chapter 11 petition and the prosecution of our Chapter 11 case.

8.    We selected SF as our attorneys because of the firm's prepetition experience with, and knowledge of, our business, as well as its experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

9.    At this time, SF's continued representation in this bankruptcy case is critical to the success of the Debtor's reorganization because SF is uniquely familiar with the Debtor's business and legal affairs.

**Bank Account Motion**

10.    At the time of this bankruptcy, the Debtor maintains three bank accounts with Bank of America, N.A., which are used to manage cash, receipts and disbursements for the business.  The Debtor routinely deposits, withdraws, and otherwise transfers funds to and from these bank accounts.  Importantly, the Debtor's merchant process servers routinely deposit funds from the Debtor's credit card receipts into these bank accounts. These bank accounts are essential to the continued operation of the Debtor's business.  The Bank Account Motion seeks authority for the Debtor to maintain its existing bank accounts.

11.    In addition, the Debtor intends to set up a new, debtor-in-possession bank account at Bank of America, N.A., (the "**DIP Account**").  The Bank Account Motion requests that to the

4833-9225-7095, v. 1

extent the Debtor's merchant process servers are holding funds belonging to the Debtor, that such merchant process servers be required to deposit the Debtor's funds into the DIP Account.

**Utilities Motion**

12.     The Debtor's utilities consist of accounts with Verizon, RingCentral, Wave Broadband, Concord Disposal Services, Frontier Communications, PG&E, SCE, Time Warner Cable, and Waste Management which are needed to provide power, water, gas, phone, internet and cable TV service to the Debtor's business.

13.     Power, gas, water, telephone, cable, and internet facilities must be provided to the Debtor's business offices in order for the Debtor to continue operating its solar business and providing customer service to its clients.  At this time, the Debtor cannot afford the risk of utility providers terminating utility services to any of the Debtor's business offices.  The Utilities Motion requests an order of this Court (i) prohibiting the various utility providers from altering, refusing or discontinuing services or requiring additional deposits or other security on account of the commencement of the Debtor's Chapter 11 Case or any pre-petition claims, (ii) establishing procedures for determining requests for additional adequate assurance of payment, and (iii) granting such other and further relief as is just and proper.

**Employee Wages Motion**

14.     As of April 25, 2017, the Debtor employed approximately 51 full-time employees (the "**Employees**").  As of the Petition Date, the Debtor estimates that it owes: (i) the Employees approximately $124,000 for the pay period ending May 5, 2017; (ii) the Internal Revenue Service approximately $35,000.00 in payroll taxes for the same pay period; (iii) the Employees health and welfare plans approximately $14,000.00 for the same pay period.

4833-9225-7095, v. 1

15. The Debtor seeks court authority to pay and honor, in the ordinary course of business and in its sole discretion, any pre-petition claims and obligations related to, and to continue to pay and honor in the ordinary course on a post-petition basis, all of the Employee wages and benefits (as defined in the Employee Wages Motion). The Debtor also request that the Court authorize and direct financial institutions to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to prepetition employee obligations.

16. The Debtor does not believe any of the Employees are owed more than the $12,850.00.

17. Although the Debtor believes that all Employee Wages and Benefits are vital to the Debtor's business, the Debtor seeks authority to maintain and make payments only on account of those Employee Wages and Benefits that the Debtor believes is necessary to prevent immediate and irreparable harm to the Debtor's business.

**Cash Collateral Motion**

18. As stated in the Cash Collateral Motion, the Debtor derives practically all of its income from the revenues it receives from it solar energy business. The Debtor depends on the revenues, in part, to maintain its business operations, including the payment of expenses for lease obligations, payroll, utilities and vendors.

19. It is essential to the continued operation of the Debtor's business that the Debtor obtains authority to use cash to maintain its business, for payment of lease obligations, insurance premiums, utilities, payroll and other maintenance expenses to fund the cost of administering this Chapter 11 case. The Debtor will maintain a detailed accounting of all expenses funded by the

4833-9225-7095, v. 1

cash collateral generated by its business.  The Debtor will also timely file monthly operating reports as required in its Chapter 11 case.

20.    If the Debtor is permitted to use cash, including cash collateral, to fund ongoing business operations and administration of the Debtor's Chapter 11 case, the Debtor can continue to run its business successfully.

21.    Without the ability to use the business revenues, the Debtor will be unable to maintain the business operations, including the payment of all necessary expenses.  Moreover, the failure to pay the aforementioned expenses will result in an inability to maintain the income stream generated from the Debtor's business operations.

22.    As President and Director of the Debtor, I reviewed the prepared budget attached to the Cash Collateral Motion, which is a good faith estimate of projected income and expenses of the Debtor for the next 8 months.  The Debtor will maintain a detailed accounting of all expenses funded by the cash collateral generated by its business operations.

23.    The Budget includes draws from the proposed debtor-in-possession financing for the first few months of the case as there is often times a 60-90 day lag between the time work is performed by the Debtor and the time cash is received for the work performed.  Therefore, the Debtor needs the proposed debtor-in-possession financing to bridge the gap during the first few months of the case.

24.    The Debtor expects, however, to have sufficient cash flows after the first few months of the case to meet its current obligations.

**DIP Financing**

25.    As stated in the DIP Financing Motion, the Debtor's current revenues and cash flow do not allow it to meet its current expense obligations to continue running the business.

4833-9225-7095, v. 1

There is often times a 60-90 day lag between the time work is performed by the Debtor and the time cash is received for the work performed.  Accordingly, the Debtor needs post-petition financing to bridge this gap and to ensure that the Debtor remains current on the necessary expenses to operate the Debtor's business.

26.    Following extensive negotiations, the Debtor agreed to a post-petition, secured revolving line of credit loan from Sierra Nevada Solar, Inc. ("**SNS**" or the "**DIP Lender**"), up to a maximum amount of 582,218, which includes approximately $182,218.00 in payroll advances since January 1, 2017.  The Debtor believes this loan is necessary to bridge the gap during the first few months of the Debtor's Chapter 11 case to cover budget shortfalls and to allow the Debtor sufficient time to realize cash receipts from its receivables, which are often paid 60-90 days after the services are performed.

27.    Due to the Debtor's current financial problems and existence of secured debt, I do not believe the Debtor would be able to obtain secured or unsecured post-petition financing on terms more favorable than those terms provided in the DIP Financing Motion.

28.    Apart from the DIP Lender, I have sought potential post-petition financing from other sources.  Each of these companies indicated they would not provide debtor-in-possession financing to the Debtor, whether on a secured or unsecured basis.

29.    Accordingly, I believe the proposed DIP Financing from the DIP Lender is reasonable, is a sound exercise of the Debtor's business judgment, and is in the best interests of the Debtor's estate, creditors and other parties in interest.  I also believe no alternative financing is available to the Debtor on any other basis, whether secured or unsecured, and that as of the date hereof, the Debtor has received no other offers for debtor-in-possession financing.

4833-9225-7095, v. 1

30.    The Debtor negotiated the terms of the DIP Financing with the DIP Lender at arm's length pursuant to the Debtor's best business judgment.  I believe the terms of and provisions of the DIP Financing are fair and reasonable under the circumstances.

**Motion to Extend Time**

31.    As stated in the Motion to Extend Time, Debtor was forced to file its voluntary petition on an emergency basis due to its necessity to obtain bankruptcy protection from its creditors and to obtain post-petition financing to continue its operations.

32.    Prior to filing, multiple creditors of the Debtor had filed lawsuits and sought to assert claims, judgments and liens against the Debtor and its assets.  Accordingly, the Debtor did not have sufficient time to gather and assemble the necessary information to completely and accurately fill out its schedules and statements.

33.    Debtor estimates that an extension to May 18, 2017, or 23 days after the Petition Date, will provide sufficient time to prepare and file the Schedules and Statements.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 26th day of April, 2017.

*Mo Rousso*

_____
Maurice Rousso, President and
Director of HelioPower, Inc.

Page 9 of 9

4833-9225-7095, v. 1