Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
M. Michelle Nisce, Esq.
Nevada Bar No. 13552
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
*Proposed Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: ) | Case No.: 17-12099-ABL |
| ) | |
| HelioPower Inc., ) | Chapter 11 |
| ) | |
| Debtor. ) | Hearing Date: OST Pending |
| ) | Hearing Time: OST Pending |

**MOTION FOR ORDER PURSUANT TO**
**11 U.S.C. §§ 105(a), 363(b), AND 503(b) AUTHORIZING THE**
<u>**DEBTOR TO PAY PREPETITION CLAIMS OF A CRITICAL VENDOR**</u>

HelioPower Inc., the debtor and debtor-in-possession in the above captioned matter (the "**Debtor**"), by and through its undersigned counsel, moves for the entry of an order authorizing the Debtor to pay prepetition claims of a critical vendor pursuant to sections 105(a), 363(b), and 503(b) of Title 11 of United States Code (as amended, the "**Bankruptcy Code**"). In support of the Motion, the Debtor respectfully states as follows:

<u>**Jurisdiction**</u>

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for relief herein are sections 105(a) and 363(b) of the Bankruptcy Code.

**<u>Background</u>**

3. On April 25, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4. The Debtor continues to operate its business and manage its property as a debtor-in-possession. No creditors' committee has been appointed in this case by the United States Trustee.

5. The Debtor is a solar energy company and energy solutions to residential and commercial customers, with over 5,000 solar and clean energy systems engineered and installed since 2001. The Debtor reduces energy costs and develops energy assets by leveraging renewable energy production, demand side management and return on investment strategies for clients in the United States.

6. In the ordinary course of operating its business, the Debtor orders and receives a wide array of goods and services that are critical to the normal and efficient operation of its business and to the providing of goods and services to the Debtor's customers and clientele (the "**Critical Goods & Services**").

7. Substantially all of the Critical Goods & Services received by the Debtor are provided pursuant to prepetition contractual relationship or purchase orders entered into with the vendors and service providers who provide Critical Goods & Services. Various vendors provide the Critical Goods & Services to the Debtor, particularly, services the Debtor relies on to operate its business.

8. As part of its normal business operations, the Debtor relies upon and requires the delivery and performance of the Critical Goods & Services to continue its business operations and will continue to require the same during the pendency of the Chapter 11 Case. As a result, the Debtor has post-petition, on-going commitments to provide the Critical Goods & Services to its customers.

9. Particularly, the Debtor is committed to completing a project with one of its customers. In turn, Tradesmen International, LLC ("**Tradesmen**") provides independent contractors that provide labor and services to this project.

10. The Debtor believes it is in the best interests of its estate and all of its creditors to obtain authority to pay Tradesmen in the ordinary course of business, including the debt owed to Tradesmen is $8,527.50 based upon prepetition activity. Attached hereto are copies of the Tradesmen invoices as **Exhibit A**.

11. The Critical Goods & Services cannot be replaced within the time frame necessary for an effective reorganization. The failure to pay the unpaid invoice to Tradesmen could require the Debtor to incur higher costs for such goods or services post-petition if it has to procure the same from alternative sources or on less favorable terms than those existing as of the Petition Date.

12. In addition, the failure to pay the Tradesmen would result in a lien placed on the project, failure of this particular project, other future revenues, and compliance with existing commitments to provide services and goods to its solar operations.

13. Payment of Tradesmen's prepetition claims will allow the Debtor to preserve the value of the its assets and continue to operate its business with minimal disruption, allowing the Debtor to generate the necessary revenues to facilitate a successful reorganization

**Relief Requested**

14.     By this Motion, the Debtor seeks an order authorizing the payment of a critical vendor a in an aggregate amount not to exceed $8,527.50, and authorizing, but not directing the Debtor, in its business judgment and sole direction, to pay certain prepetition obligations owed to Tradesmen for provided Critical Goods and Services on traditional payment terms, and not cash-on-delivery.

15.     The Debtor also submits that this request should be without prejudice to future requests should the Debtor determine in its business judgment that further payments to vendors is appropriate and necessary.

16.     In addition to seeking authority to pay Tradesmen claim, the Debtor also proposes that the order, a proposed copy of which is attached hereto as **Exhibit B**, provides authorization for the Debtor to condition payment of all or a portion of the Tradesmen claim Debtor's agreement with Tradesmen to continue supplying goods and/or services in accordance with certain procedures, generally as follows:

(a)     the payment of any prepetition claims of the Tradesmen claim is conditioned upon Tradesmen providing terms as the Debtor deems necessary, in the Debtor's sole discretion, to ensure that Tradesmen will continue to supply the Debtor after the Petition Date in accordance with the normal trade terms that existed prior to the Petition Date upon completion of the project, or on such other terms and conditions that the Debtor determines are reasonably acceptable under the circumstances;

(b)     the payment of any prepetition claims of Tradesmen is also conditioned upon Tradesmen providing new value to the Debtor; and

(c)     if Tradesmen ceases to supply the Debtor after the Petition Date in accordance with the normal trade terms that existed prior to the Petition Date, or on such other terms and conditions that the Debtor determines are reasonably acceptable under the circumstances, then any amounts paid to Tradesmen on account of its prepetition claim are subject to: (i) disgorgement; and (ii) avoidance under 11 U.S.C. § 549 and recovery under 11 U.S.C. § 550 by the Debtor or other authorized estate representative.

**Basis for Relief**

17.     Section 105(a) of the Bankruptcy Court empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Importantly, there is clearly no per se prohibition on critical vendor orders. See In re Humbolt Creamery, LLC, 2009 WL 2820552 (Bankr. N.D. Cal. Apr. 23, 2009) (nothing in the Bankruptcy Code forbids payment on a prepetition debt before confirmation of a plan, and Bankruptcy Rule 6003(b) specifically contemplates such payments). Indeed, if the fundamental purpose of chapter 11 is the rehabilitation of the debtor, then the equal distribution of the bankruptcy estate to the creditors, while also a tenet of bankruptcy law, must sometimes yield to such purpose. See In re Adams Apple, Inc., 829 F.2d 1484, 1490 (9th Cir. 1987) (noting that "cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation" and that such considerations "may supersede the policy of equal treatment").

18.     Furthermore, this Court has recently approved critical vendor motions despite objection from the United States Trustee. See In re Bistro Central, LV LLC, Case No. 14-14931-ABL, Docket No. 122; In re Tatuado Hospitality Mgmt. Group, LLC, Case No. 16-10460-ABL, Docket No. 79; see also In re Station Casinos, Inc., No. 09-52477-GWZ (Bankr. D. Nev. Apr.

15, 2011) (authorizing payments to critical vendors, including those arising under casino games leases).

19. Moreover, bankruptcy courts approved the payment of critical vendor claims in circumstances where the payments are necessary to protect a debtor's business operations from substantial disruption. See, e.g., In re Tropical Sportswear Int'l Corp., 320 B.R. 15, 20-21 (Bankr. M.D. Fla. 2005) (allowing critical vendor payments where interruption in flow of goods would "substantially jeopardize the Debtors' ability to conduct business"). Pursuant to 363(b)(1) of the Bankruptcy Code, a debtor in possession may, after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Paying a prepetition debt in order to keep "critical" supplies flowing constitute use of estate property "other than" in the ordinary course of business, and thus requires court approval.

20. To justify paying critical vendors' prepetition claims under section 363(b)(1) of the Bankruptcy Code, bankruptcy courts usually require the debtor to establish that:

  (a) the payments are necessary to the reorganization process;

  (b) a sound business justification exists in that the critical vendors refuse to do business with the debtor in possession absent being afforded critical vendor status; and

  (c) the disfavored creditors are at least as well off as they would have been had the critical vendor payment order not been entered.

In re Jeans.com, Inc., 502 B.R. 250, 258-259 (D.P.R. 2013); see also In re United American, Inc., 327 B.R. 776 (Bankr. E.D. Va. 2005).

21. Furthermore, pursuant to sections 1107 and 1108 of the Bankruptcy Code, a debtor is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." In re CoServ, LLC, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the

obligation to "protect and preserve the estate, including an operating business's going-concern value." Id. Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id.

22. Simply put, courts generally rely on the legal theories rooted in sections 363(b) and 105(a) of the Bankruptcy Code, and the authorization of payment of prepetition obligations under section 363(b) of the Bankruptcy Code should be granted where a sound business purpose exists for doing so. See In re Tropical Sportswear Int'l Corp., 320 B.R. at 20 ("Bankruptcy courts recognize that section 363 is a source of authority to make critical vendor payments, and section 105 is used to fill in the blanks.").

23. Each of the above considerations is satisfied in this case. As set forth herein and in the declaration of Maurice Rousso (the "**Rousso Declaration**"), filed concurrently herewith, Tradesmen is necessary to the successful reorganization of the Debtor.

24. Importantly, without the services Tradesmen provides, the Debtor may lose the project it is committed to completing, which will undoubtedly reduce revenue and diminish the chances of a successful reorganization.

25. Finally, there is no reason to suspect that other creditors would be prejudiced by the payment of the Critical Vendor claims. Indeed, the payment of such claims is essential to the going concern value of the Debtor's business. Furthermore, as set forth above and in the proposed order, the payment of such claims is conditioned upon Tradesmen providing new value to the Debtor.

26. Importantly, a substantial portion of the services to which Tradesmen claims relate to were received by the Debtor in the ordinary course of business within the twenty (20) days immediately preceding the commencement of this case. To that end, those Critical Vendor

claims may be entitled to administrative expense priority pursuant to Bankruptcy Code sections 503(b)(9) and 507(a)(2), and the Debtor is required to pay such claims in full as a prerequisite to confirmation of a Chapter 11 plan. See 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority under section 507(a)(2)).  Accordingly, to the extent that Tradesmen claim is entitled to priority under section 503(b)(9), the relief requested herein will only affect the timing, and not the amount, of payment of such claim.

27.     The Debtor considers several vendors, including Tradesmen, to be critical and vital to its operations because: (a) those parties provides the Debtor with goods and services that are essential to the Debtor's business; (b) replacing the products cannot be done without disrupting or otherwise harming the Debtor's business (at least in the near term); (c) most vendors have indicated to the Debtor, or there is a substantial risk, that they will not supply the Debtor with post-petition services without payment of all or a portion of their prepetition claims, and will only deal with the Debtor on COD terms; and (d) not one of the vendors is not obligated by contract, or otherwise, to supply the Debtor post-petition.

28.     Here, if the Debtor were required to replace its vendors, such an effort would consume a significant amount of management's time, distract management from focusing on proposing and developing a plan of reorganization, and cost the estate substantially more than simply paying critical vendors to ensure that the Debtor's business functions during the Chapter 11 Case with few distractions and disruptions. Second, if the Debtor sought alternative suppliers, the process would be severely disruptive to the business operations.  Third, if the Debtor were to cease business operations, even for a short time due to the lack of product to sell, the Debtor would be irreparably harmed.  Therefore, it is essential that the Debtor be authorized to pay

critical vendors in order to preserve the value of the Debtor's assets and continue to operate its business with minimal disruption.

29. To preserve the value of the Debtor's estate, the Debtor proposes to condition the payment of critical vendors claim on such terms, if any, as the Debtor deems necessary, in the Debtor's sole discretion, to ensure that critical vendors will continue to supply the Debtor after the Petition Date in accordance with normal trade terms that existed prior to the Petition Date, or on such other terms and conditions that the Debtor determines are reasonably acceptable under the circumstances.

**Reservation of Rights**

30. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtor expressly reserves its right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to subsequently dispute such claim.

**Notice**

31. Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the District of Nevada, (ii) certain governmental agencies, (iii) the Debtor's 20 largest unsecured creditors, (iv) Tradesmen, and (v) all parties requesting notices pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that this Court enter an order, in the form of order attached hereto as **Exhibit B**: (i) granting the relief requested in this Motion authorizing the Debtor to pay up to $8,527.50 to Tradesmen, without prejudice to future requests, and (ii) granting such other and further relief that the Court deems just and proper.

Dated this 10th day of May, 2017.

Respectfully Submitted,

/s/Samuel A. Schwartz
Samuel A. Schwartz, Esq.
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
*Proposed Attorneys for the Debtor*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copy of the foregoing was sent electronically via the Court's CM/ECF system on May 10, 2017, to the following:

LARS EVENSEN on behalf of Creditor SIERRA NEVADA SOLAR, INC. lkevensen@hollandhart.com, yjdekle@hollandhart.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV - 11
edward.m.mcdonald@usdoj.gov

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

I HEREBY CERTIFY that true and correct copy of the foregoing was sent via U. S. Regular Mail on May 10, 2017, to the following:

United States Trustee
300 Las Vegas Blvd. South #4300
Las Vegas, NV 89101

Clark County Assessor
c/o Bankruptcy Clerk
500 S Grand Central Pkwy
Box 551401
Las Vegas, NV 89155-1401

Clark County Treasurer
c/o Bankruptcy Clerk
500 S Grand Central Parkway
PO Box 551220
Las Vegas, NV 89155-1220

Dept of Employment, Training and Rehab
Employment Security Division
500 East Third Street
Carson City, NV 89713

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Nevada Dept of Taxation, BK Section
555 E. Washington Ave. #1300
Las Vegas, NV 89101

State of Nevada Dept. of Motor Vehicles
Attn: Legal Division
555 Wright Way
Carson City, NV 89711

C Electric
33959 Galleron Street
Temecula, CA 92592

American Technologies, Inc.
210 Baywood Avenue
Orange, CA 92865

Ari-thane
1530 N. Missile Way
Anaheim, CA 92801

Bank of America
Bankcard Center
P.O. Box 982238
El Paso, TX 79998-2238

Burlingame Bay
577 Airport Blvd., Suite 100
Burlingame, CA 94010

Canadian Solar (USA) Inc.
3000 Oak Road
Walnut Creek, CA 94597

| | |
|---|---|
| Duncan Bolt<br>8535 Dice Road<br>Santa Fe Springs, CA 90670 | Skylift Rentals<br>P.O Box 2224<br>Irwindale, CA 91706 |
| Five Star Electric<br>903 Industry Way, Suite A<br>El Centro, CA 92243 | State of California Employment Tax Dept.<br>SoCal Authorization Center 857<br>P.O. Box 19009<br>San Bernardino, CA 92423 |
| Hyundai-Korea<br>21250 Hawthorne Blvd.<br>Torrance, CA 90503 | Sunpower Corporation<br>P.O.Box 60000<br>San Francisco, CA 94160 |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | WEX Gas<br>PO Box 6293<br>Carol Stream, IL 60197-6293 |
| North County Fence, Inc.<br>29690 Cottonwood Cove Drive<br>Menifee, CA 92584 | Lars K. Evensen, Esq.<br>HOLLAND & HART LLP<br>9555 Hillwood Drive, Second Floor<br>Las Vegas, NV 89134 |
| Orion Solar Racking<br>2917 Vail Ave<br>Commerce, CA 90040 | Robert A. Faucher, Esq.<br>HOLLAND & HART LLP<br>800 W. Main Street, Suite 1750<br>PO Box 2527<br>Boise, ID 83701-2527 |
| PVHardware<br>7732 Fair Oaks Blvd<br>Carmichael, CA 95608 | |
| Rexel Solar Solutions<br>2363 West La Palma Ave<br>Anaheim, CA 92801 | Cool Air Solutions<br>41162 Sandalwood Circle<br>Murrieta, CA 92562 |
| SNS EH Brite, LLC<br>710 5th St.<br>Prescott, AZ 86303 | General Tree Service, Inc.<br>4811 Kimber Ave.<br>Bakersfield, CA 93307 |
| Sierra Nevada Solar, Inc<br>710 5th St<br>Prescott, AZ 86301 | Tradesmen International, LLC<br>PO Box 677807<br>Dallas, TX 75267-7807 |

/s/Vanessa Romero_____
Vanessa Romero, an employee of Schwartz Flansburg PLLC