Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No.: 17-12099-ABL |
| | ) | |
| HelioPower, Inc., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Confirmation Hearing Date:  August 16, 2017 |
| _____ | ) | Confirmation Hearing Time: 1:30 p.m. |

## PLAN OF REORGANIZATION FOR HELIOPOWER, INC.
## UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

**TABLE OF CONTENTS**

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND
DEFINED TERMS ..................................................................................................................1
    A.    Rules of Interpretation, Computation of Time and Governing Law .................................1
    B.    Defined Terms .................................................................................................................1

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS....................................................7
    A.    Administrative Claims .....................................................................................................7
    B.    Priority Tax Claims..........................................................................................................9

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY
INTERESTS............................................................................................................................9
    A.    Summary ..........................................................................................................................9
    B.    Classification and Treatment of Claims and Equity Interests .......................................10
    C.    Discharge of Claims ......................................................................................................13

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN .......................................................13
    A.    Presumed Acceptance of Plan .......................................................................................13
    B.    Voting Classes ...............................................................................................................14
    C.    Acceptance by Impaired Classes of Claims ..................................................................14
    D.    Cramdown ......................................................................................................................14
    E.    Elimination of Vacant Classes ......................................................................................14

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................................14
    A.    Restructuring Transactions.............................................................................................14
    B.    Associated Transactions.................................................................................................16
    C.    General Settlement of Claims ........................................................................................17
    D.    Continued Corporate Existence......................................................................................17
    E.    Vesting of Assets in the Reorganized Debtor ...............................................................17
    F.    Release of Liens, Claims and Equity Interests ..............................................................18
    G.    Certificate of Incorporation and Bylaws .......................................................................18
    H.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes...........18

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.................18
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ...................18
    B.    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases.......20
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases..................20
    D.    Contracts and Leases Entered Into After the Commencement Date ..............................20

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS .......................................................21
    A.    Distributions for Claims Allowed as of the Effective Date...........................................21
    B.    Distributions on Account of Claims Allowed After the Effective Date.........................21
    C.    Delivery and Distributions and Undeliverable or Unclaimed Distributions ..................21
    D.    Compliance with Tax Requirements/Allocations...........................................................23
    E.    Timing and Calculation of Amounts to Be Distributed ................................................23
    F.    Setoffs ...........................................................................................................................23

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ............................................................................................................24
    A.    Resolution of Disputed Claims ......................................................................................24
    B.    Disallowance of Claims .................................................................................................25
    C.    Amendments to Claims ..................................................................................................25

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN ...................................................................................................................................................25
    A.     Conditions Precedent to Confirmation ...............................................................25
    B.     Conditions Precedent to Consummation .............................................................25
    C.     Waiver of Conditions .........................................................................................26
    D.     Application of Article IX to a Prevailing Bidder Other than SNS. .....................26
    E.     Effect of Non Occurrence of Conditions to Consummation ...............................26

ARTICLE X. SETTLEMENT, RELEASE AND RELATED PROVISIONS ...............................26
    A.     Compromise and Settlement ...............................................................................26
    B.     Preservation of Rights of Action .......................................................................27

ARTICLE XI. BINDING NATURE OF PLAN .........................................................................27

ARTICLE XII. RETENTION OF JURISDICTION ..................................................................28

ARTICLE XIII. MISCELLANEOUS PROVISIONS ...............................................................29
    A.     Payment of Statutory Fees .................................................................................29
    B.     Modification of Plan ...........................................................................................29
    C.     Revocation of Plan .............................................................................................29
    D.     Successors and Assigns ......................................................................................29
    E.     Reservation of Rights .........................................................................................29
    F.     Section 1146 Exemption .....................................................................................29
    G.     Further Assurances .............................................................................................30
    H.     Severability ........................................................................................................30
    I.     Service of Documents .........................................................................................30
    J.     Return of Security Deposits ................................................................................30
    K.     Filing of Additional Documents .........................................................................30
    L.     Default ................................................................................................................30

4819-0051-7451, v. 1

**PLAN OF REORGANIZATION OF HELIOPOWER, INC.**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

HelioPower, Inc., a Nevada corporation, as debtor and debtor in possession (the "**Debtor**"), proposes the following plan of reorganization (the "**Plan**") for the resolution of the outstanding claims against, and equity interests in, the Debtor. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code (as defined below). Reference is made to the Debtor's Disclosure Statement, for a discussion of the Debtor's history, business, results of operations, historical financial information, accomplishments during the Chapter 11 Case (as defined below), projections and properties, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents, which are or will be filed with the Bankruptcy Court, that are referenced in this Plan or the Disclosure Statement.

### ARTICLE I.

**RULES OF INTERPRETATION, COMPUTATION OF TIME,**
**GOVERNING LAW AND DEFINED TERMS**

A.      *Rules of Interpretation, Computation of Time and Governing Law*

1.      For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

B.      *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including, without limitation, Allowed Professional Compensation) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date by any Retained Professionals in the Chapter 11 Case, that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount.

2.      "*Administrative Claim*" means any Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code (excluding claims under section 503(b)(9) of

the Bankruptcy Code), including, without limitation: (a) the actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the business of the Debtor; (b) Allowed Professional Compensation; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

3.      "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

4.      "*Allowed*" means, with respect to Claims or Equity Interests:  (a) any Claim or Equity Interest,, proof of which is timely Filed by the applicable Claims Bar Date (or which by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Equity Interest that is listed in the Schedules as of the Effective Date as not contingent, not unliquidated and not Disputed, and for which no Proof of Claim or Interest has been timely Filed; or (c) any Claim or Equity Interest Allowed pursuant to the Plan; *provided*, *however,* that with respect to any Claim or Equity Interest described in clause (a) above, such Claim or Equity Interest shall be considered Allowed only if and to the extent that (x) with respect to any Claim or Equity Interest, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) such an objection is so interposed and the Claim or Equity Interest shall have been Allowed for distribution purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor or the Reorganized Debtor and without any further notice to or action, order or approval of the Bankruptcy Court.

5.      "*Allowed Professional Compensation*" means all Accrued Professional Compensation allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

6.       "*Assets*" means all of the Debtor's right, title and interest of any nature in property, wherever located, as specified in section 541 of the Bankruptcy Code, and as may be listed (or amended) in the Schedules of Assets filed by the Debtor.

7.      "*Avoidance Actions*" means any and all claims and causes of action which any of the Debtor, the debtor in possession, the Estate, or other appropriate party in interest has asserted or may assert under sections 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

8.      "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims (modified, as necessary, based on voting party in accordance with the Disclosure Statement Order) entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, applicable to the Chapter 11 Case.

10.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Case, and to the extent of the withdrawal of any reference under section 157 of Title 28 of the United States Code and/or the Order of the United States District Court for the District of Nevada pursuant to section 157(a) of Title 28 of the United States Code, the United States District Court for the District of Nevada.

11.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court.

12.      "*Budget*" means that budget prepared by the Debtor and filed with the Bankruptcy Court as page 2 of 2 at docket no. 10-2.

13.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

14.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

15.     "*Causes of Action*" means all actions, causes of action (including Avoidance Actions), Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Case, including through the Effective Date.

16.     "*Chapter 11 Case*" means the chapter 11 case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

17.     "*Claim*" means any claim against the Debtor as defined in section 101(5) of the Bankruptcy Code.

18.     "*Claims Bar Date*" means, as applicable, (a) August 23, 2017, (b) the Governmental Bar Date or (c) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for Filing such Claims.

19.     "*Claims Objection Bar Date*" means, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims; *provided, however*, that in no event shall the Claims Objection Bar Date be greater than 120 days after the Effective Date with respect to any General Unsecured Claim in Class 4.

20.     "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court.

21.     "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

22.     "*Commencement Date*" means April 25, 2017, the date on which the Debtor commenced the Chapter 11 Case.

23.     "*Commencement Date AR*" means the Debtor's accounts receivable as of the Commencement Date, as identified in Part 3 of Schedule A/B of the Schedules.

24.     *Commission*" means the U.S. Securities and Exchange Commission.

25.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in Article IX hereof having been:  (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

26.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

27.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

28.     "*Confirmation Hearing Notice*" means that certain notice of Confirmation Hearing approved by the Disclosure Statement Order.

29.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

30.    "*Consummation*" means the occurrence of the Effective Date.

31.    "*Creditor*" means a Holder of a Claim.

32.    "*Cure Claim*" means a Claim based upon the Debtor's default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor under sections 365 or 1123 of the Bankruptcy Code.

33.    "*Debtor*" means HelioPower, Inc., in its individual capacity as a debtor in this Chapter 11 Case.

34.    "*Debtor in Possession*" means the Debtor, as debtor in possession in this Chapter 11 Case.

35.    "*Debtor's Revenues*" means the actual aggregate gross revenues of the Debtor during the time period at issue realized from Residential-Hero; Residential-Sunrun; Residential-Cash; Commercial-EPC; Partner Services – Residential EPC; Asset Management-Direct; and Asset Management-Partner.

36.    "*DIP Loan Facility*" means that post-petition lending facility, approved by the Bankruptcy Court, pursuant to which the Debtor borrowed funds from SNS after the Commencement Date.

37.    "*Disclosure Statement*" means the *Disclosure Statement for Plan of Reorganization of HelioPower, Inc. Under Chapter 11 of the Bankruptcy Code*, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

38.    "*Disclosure Statement Motion*" means that certain *Motion for Order (A) Approving the Disclosure Statement, (B) Establishing the Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents,* filed with the Bankruptcy Court on June 30, 2017, as the Motion may be amended from time to time.

39.    "*Disclosure Statement Order*" means that certain *Order (A) Approving the Disclosure Statement, (B) Establishing the Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents,* approved by the Bankruptcy Court on June 30, 2017, as the order may be amended from time to time.

40.    "*Disputed Claim*" means, with respect to any Claim or Equity Interests, any Claim or Equity Interests listed on (a) the Claims Register that is not yet Allowed, or (b) Scheduled as Disputed.

41.    "*Distribution Agent*" means the Debtor or any distribution agent approved and retained by the Debtor.

42.    "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

43.    "*Effective Date*" means the day that is the first Business Day occurring at least 14 days after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article IX.B hereof have been: (i) satisfied; or (ii) waived pursuant to Article IX.C hereof.

44.    "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

45.    "*Equity Contribution*" means SNS's Cash contribution to the Reorganized Debtor on the Effective Date as described in the first paragraph of Section A of Article V of this Plan.

46.    "*Equity Interest*" means any: (a) equity security in the Debtor, including all issued, unissued, authorized, or outstanding shares of stock, together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto or (b) partnership, limited liability company, or similar interest in the Debtor.

47.    "*Estate*" means, as to the Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

48.    "*Exchange Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state or local law.

49.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

50.    "*Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

51.    "*File*" or "*Filed*" means file, filed or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

52.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, re-argument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

53.    "*General Unsecured Claim*" means: (i) a Class 3 General Unsecured; and (ii) any unsecured Claim against any Debtor that is not: (a) an Administrative Claim, (b) a Priority Tax Claim, (c) a Priority Non-Tax Claim, or (d) a Secured Claim.

54.    "*Governmental Bar Date*" means October 23, 2017.

55.    "*Holder*" means an Entity holding a Claim or an Equity Interest.

56.    "*Impaired*" means any Claims in an Impaired Class.

57.    "*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

58.    "*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no later than thirty (30) days after the Effective Date, when distributions under the Plan shall commence.

59.    "*Net Income*" means, on and after the Effective Date, the Debtor's revenues less expenses, taxes, depreciation and amortization.

60.    "*New Equity Interests*" means the equity in Reorganized Debtor to be authorized, issued or reserved on the Effective Date pursuant to the Plan, which shall constitute all of the direct or indirect equity of the Reorganized Debtor.

61.    "*Periodic Distribution Date*" means the first Business Day that is as soon as reasonably practicable occurring no later than approximately 180 days after the Initial Distribution Date, and thereafter, the first

5

Business Day that is as soon as reasonably practicable occurring no later than 180 days after the immediately preceding Periodic Distribution Date.

62.     "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

63.     "*Petition Date*" means April 25, 2017, the date on which the Debtor commenced the Chapter 11 Case.

64.     "*Plan*" means this *Plan of Reorganization of HelioPower, Inc. Under Chapter 11 of the Bankruptcy Code* dated June 30, 2017, as amended, supplemented or modified from time to time, including, without limitation, the Plan Supplement, which is incorporated herein by reference.

65.     "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules.

66.     "*Priority Non-Tax Claim*" means any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

67.     "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

68.     "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

69.     "*Proof of Interest*" means proof of Equity Interest filed against the Debtor in the Chapter 11 Case.

70.     "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

71.     "*Record Date*" means the close of business on October 23, 2017, the date of the Governmental Bar Date.

72.     "*Reorganized Debtor*" means the Debtor, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

73.     "*Retained Professional*" means any Entity: (a) employed in this Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

74.     "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

75.     "*Securities Act*" means the United States Securities Act of 1933, as amended.

76.     "*SNS*" means Sierra Nevada Solar, Inc., the Debtor's parent company, prepetition and postpetition lender.

6

77.     "*SF*" means Schwartz Flansburg PLLC.

78.     "*Solicitation Deadline*" means the close of business on July 5, 2017.

79.     "*Solicitation Package*" means the Disclosure Statement, the Plan, all exhibits thereto, Ballots and the Confirmation Hearing Notice.

80.     "*Tort Claim*" means any Claim that has not been settled, compromised or otherwise resolved that: (a) arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to protection of human health, safety or the environment.

81.     "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

82.     "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

83.     "*Unimpaired Class*" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

84.     "*Voting Classes*" means, Classes 2, 3, 4 and 5.

85.     "*Voting Deadline*" means August 2, 2017 at 5:00 p.m. prevailing Pacific Time for all Holders of Claims, which is the date and time by which all Ballots must be received by the Debtor in accordance with the Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court with respect to any Voting Class.

86.     "*Warranty Claims*" means claims as reflected in the books and records of the Debtor based upon a warranty issued by the Debtor prior to the Commencement Date in respect of construction work completed by the Debtor prior to the Commencement Date, which warranty remained in effect as of the Commencement Date.

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

A.     *Administrative Claims*

Each Holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Claim in Cash (a) on or as soon as reasonably practicable after the Effective Date, (b) if such Claim is Allowed after the Effective Date, on or as soon as reasonably practicable after the date such Claim is Allowed, or (c) upon such other terms as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and such Holder or otherwise upon an order of the Bankruptcy Court; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred by the Debtor in the ordinary course of business during the chapter 11 cases, other than those liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents related to such transactions, and holders of claims related to such ordinary course liabilities are not required to File or serve any request for payment of such Administrative Claims.

1.     Bar Date for Administrative Claims

Except as otherwise provided in this Article II.A hereof, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 45 days after the Effective

Date. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims, including, without limitation, Holders of Claims for liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims who assert that such claims constitute Administrative Claims, that do not File and serve such a request by the applicable Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtor or any Reorganized Debtor or their Estate and property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Reorganized Debtor and the requesting party by the later of (a) 120 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by the Bankruptcy Court and/or on motion of a party in interest approved by the Bankruptcy Court.

   2.   <u>Professional Compensation and Reimbursement Claims</u>

   Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Reorganized Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 45 days after the Effective Date; *provided* that the Reorganized Debtor shall pay Retained Professionals or other Entities in the ordinary course of business for any work performed after the Confirmation Date. Objections to any Fee Claim must be Filed and served on the Reorganized Debtor and the requesting party by 14 days after the Filing of the applicable request for payment of the Fee Claim. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims. Each Holder of an Allowed Fee Claim shall be paid by the Reorganized Debtor in Cash within five (5) Business Days of entry of the order approving such Allowed Fee Claim.

   3.   <u>SNS's Claim Under the DIP Loan Facility</u>

   SNS shall have an Allowed Administrative Claim equal to all amounts owing by the Debtor to SNS as of the Effective Date in respect of the DIP Loan Facility. The Reorganized Debtor shall pay SNS's Allowed Administrative Claim with interest at eight percent (8%) per annum until paid in full, commencing as of the Effective Date as follows:

   i.    $5,000.00 per month for months 1 through 12;
   ii.   $7,500.00 per month for months 13 through 24; and
   iii.  Beginning with month 25 after the Effective Date, the balance then due and owing under the DIP Facility shall be paid in 24 equal installments ending on the 48th month after the Effective Date.

   SNS's claim described in this Section A.3 of Article II shall continue to be secured by a security interest in all of Reorganized Debtor's assets notwithstanding Article V.F. Reorganized Debtor shall execute such documents and instruments as are required of it by SNS to evidence and perfect such security interests.

   In the event that SNS is not the Winning Bidder (as defined below) for the New Equity Interests, then it shall not be bound by the concession with respect to its super-priority Administrative Claim encompassed in the preceding paragraphs. Instead, in accordance with Bankruptcy Code section 1129(a)(9)(A), unless otherwise agreed by the parties, SNS on the Effective Date shall receive cash equal to the Allowed amount of its Administrative Claim in respect of the DIP Loan Facility. The preceding two sentences are not intended to, and shall not, prejudice SNS's right to exercise all of its rights and remedies in respect of the DIP Loan Facility as approved by the Bankruptcy Court, subject to approved carve-outs for Approved Professional Compensation. Without limitation, SNS's claim described in this paragraph shall continue to be secured by a security interest in all of Reorganized Debtor's assets notwithstanding Article V.F. and the Reorganized Debtor shall execute such documents and instruments as are required of it by SNS to evidence and perfect such security interests to the extent SNS is not paid in full on the Effective Date.

4819-0051-7451, v. 1

B.    *Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim:  (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtor or Reorganized Debtor, as applicable, and such Holder; *provided, however,* that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Commencement Date, plus simple interest at the rate of five percent (5%) per annum on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by a particular taxing authority, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such claim shall be paid in full in cash in accordance with the terms of any agreement between the Debtor and such holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.  The Allowed Claims of the California Franchise Tax Board, the Nevada Department of Taxation and the IRS, to the extent they fall within section 507(a)(8), shall be paid in accordance with clause (3) above in this Section B of Article II, or as otherwise agreed by the parties.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

A.    *Summary*

1.    This Plan constitutes the chapter 11 plan of reorganization for the Debtor.  Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims against the Debtor are placed in Classes for the Debtor.  Class 6 consists of Equity Interests.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims, as described in Article II.

2.    The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3.    <u>Summary of Classification and Treatment of Classified Claims and Equity Interests</u>

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Priority Wage Claims | Unimpaired | Not Entitled to Vote |
| 2(a) | Secured Claim of Enterprise | Impaired | Entitled to Vote |
| 2(b) | Secured Claim of Enterprise | Impaired | Entitled to Vote |
| 2(c) | Secured Claim of Enterprise | Impaired | Entitled to Vote |
| 2(d) | Secured Claim of Enterprise | Impaired | Entitled to Vote |
| 2(e) | Secured Claim of Enterprise | Impaired | Entitled to Vote |
| 2(f) | Secured Claim of Enterprise | Impaired | Entitled to Vote |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Warranty Claims | Impaired | Entitled to Vote |
| 5 | Claims of SNS | Impaired | Entitled to Vote |
| 6 | Equity | Impaired | Not Entitled to Vote |

B.    *Classification and Treatment of Claims and Equity Interests*

1.    <u>Class 1 – Priority Wage Claims</u>

(a)    *Classification:* Class 1 consists of Allowed Claims of the Debtor's employees for wages or sales commissions described by section 507(a)(4) of the Bankruptcy Code (which allows priority treatment, but only to the extent of $12,475 for each individual or corporation, as the case may be, earned within 180 of the Commencement Date) not previously paid by the Debtor.  Unless the Holder of such claim agrees otherwise, such Holders shall receive payment of their claim amount entitled to priority on the Effective Date of the Plan.

(b)    *Treatment:*  Holders of Allowed Class 1 claims shall be paid in full at the Effective Date, or, if allowed after the Effective Date, within five business days of the date of a Final Order allowing such claims.

(c)    *Voting:* Class 1 claims are not impaired.  Holders of Class 1 Claims are deemed to accept the Plan.

2.    <u>Class 2(a) – Secured Claim of Enterprise</u>

(a)    *Classification:* Class 2(a) consists of the Secured Claim of Enterprise Fleet Management, Inc. against the Debtor's 2011 Ford F-150:  VIN xxxx3255.

(b)    *Treatment:*  Holder of the Allowed Class 2(a) Claim shall be paid the value of the related vehicle in (sixty) 60 equal monthly payments, without interest, and in accordance with the terms of its related security agreement with the Debtor.

(c)    *Valuation*: The Class 2(a) Secured Claim shall be revalued on the Effective Date, pursuant to sections 1123 and 506 of the Bankruptcy Code.  The Confirmation Order approving the Plan shall set forth the value the first lien claim as of the Effective Date and as stated in the Disclosure Statement.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(a) claim that is deemed to be unsecured in accordance with the revaluation of the vehicle shall be afforded the same treatment received by general unsecured creditors in Class 3.

(e)    *Voting:* Class 2(a) is an Impaired Class, and Holders of Class 2(a) Claims are entitled to vote to accept or reject the Plan.

3.    <u>Class 2(b) – Secured Claim of Enterprise</u>

(a)    *Classification:* Class 2(b) consists of the Secured Claim of Enterprise Fleet Management, Inc. against the Debtor's 2010 Chevrolet 1500:  VIN xxxx4970.

(b)    *Treatment:*  Holder of the Allowed Class 2(b) Claim shall be paid the value of the related vehicle in (sixty) 60 equal monthly payments, without interest, and in accordance with the terms of its related security agreement with the Debtor.

(c)    *Valuation*: The Class 2(b) Secured Claim shall be revalued on the Effective Date, pursuant to sections 1123 and 506 of the Bankruptcy Code.  The Confirmation Order approving the Plan shall set forth the value the first lien claim as of the Effective Date and as stated in the Disclosure Statement.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 2(b) claim that is deemed to be

unsecured in accordance with the revaluation of the vehicle shall be afforded the same treatment received by general unsecured creditors in Class 3.

(e) *Voting:* Class 2(b) is an Impaired Class, and Holders of Class 2(b) Claims are entitled to vote to accept or reject the Plan.

4. <u>Class 2(c) – Secured Claim of Enterprise</u>

(a) *Classification:* Class 2(c) consists of the Secured Claim of Enterprise Fleet Management, Inc. against the Debtor's 2011 Ford F-150:  VIN xxxx9479.

(b) *Treatment:*  Holder of the Allowed Class 2(c) Claim shall be paid the value of the related vehicle in (sixty) 60 equal monthly payments, without interest, and in accordance with the terms of its related security agreement with the Debtor.

(c) *Valuation*: The Class 2(c) Secured Claim shall be revalued on the Effective Date, pursuant to sections 1123 and 506 of the Bankruptcy Code.  The Confirmation Order approving the Plan shall set forth the value the first lien claim as of the Effective Date and as stated in the Disclosure Statement.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(c) claim that is deemed to be unsecured in accordance with the revaluation of the vehicle shall be afforded the same treatment received by general unsecured creditors in Class 3.

(e) *Voting:* Class 2(c) is an Impaired Class, and Holders of Class 2(c) Claims are entitled to vote to accept or reject the Plan.

5. <u>Class 2(d) – Secured Claim of Enterprise</u>

(a) *Classification:* Class 2(d) consists of the Secured Claim of Enterprise Fleet Management, Inc. against the Debtor's 2013 Ford F-150: VIN xxxx2665.

(b) *Treatment:*  Holder of the Allowed Class 2(d) Claim shall be paid the value of the related vehicle in (sixty) 60 equal monthly payments, without interest, and in accordance with the terms of its related security agreement with the Debtor.

(c) *Valuation*: The Class 2(d) Secured Claim shall be revalued on the Effective Date, pursuant to sections 1123 and 506 of the Bankruptcy Code.  The Confirmation Order approving the Plan shall set forth the value the first lien claim as of the Effective Date and as stated in the Disclosure Statement.

(d) *Unsecured Portion of the Claim*: Any amount of a Class 2(d) claim that is deemed to be unsecured in accordance with the revaluation of the vehicle shall be afforded the same treatment received by general unsecured creditors in Class 3.

(e) *Voting:* Class 2(d) is an Impaired Class, and Holders of Class 2(c) Claims are entitled to vote to accept or reject the Plan.

6. <u>Class 2(e) – Secured Claim of Enterprise</u>

(a) *Classification:* Class 2(e) consists of the Secured Claim of Enterprise Fleet Management, Inc. against the Debtor's 2012 Ford F-150: VIN xxxx7517.

4819-0051-7451, v. 1

(b)     *Treatment:*  Holder of the Allowed Class 2(e) Claim shall be paid the value of the related vehicle in (sixty) 60 equal monthly payments, without interest, and in accordance with the terms of its related security agreement with the Debtor.

(c)     *Valuation*: The Class 2(e) Secured Claim shall be revalued on the Effective Date, pursuant to sections 1123 and 506 of the Bankruptcy Code.  The Confirmation Order approving the Plan shall set forth the value the first lien claim as of the Effective Date and as stated in the Disclosure Statement.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(e) claim that is deemed to be unsecured in accordance with the revaluation of the vehicle shall be afforded the same treatment received by general unsecured creditors in Class 3.

(e)     *Voting:* Class 2(e) is an Impaired Class, and Holders of Class 2(e) Claims are entitled to vote to accept or reject the Plan.

7.     <u>Class 2(f) – Secured Claim of Enterprise</u>

(a)     *Classification:* Class 2(f) consists of the Secured Claim of Enterprise Fleet Management, Inc. against the Debtor's 2012 Ford F-150: VIN xxxx4418.

(b)     *Treatment:*  Holder of the Allowed Class 2(f) Claim shall be paid the value of the related vehicle in (sixty) 60 equal monthly payments, without interest, and in accordance with the terms of its related security agreement with the Debtor.

(c)     *Valuation*: The Class 2(f) Secured Claim shall be revalued on the Effective Date, pursuant to sections 1123 and 506 of the Bankruptcy Code.  The Confirmation Order approving the Plan shall set forth the value the first lien claim as of the Effective Date and as stated in the Disclosure Statement.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 2(f) claim that is deemed to be unsecured in accordance with the revaluation of the vehicle shall be afforded the same treatment received by general unsecured creditors in Class 3.

(e)     *Voting:* Class 2(f) is an Impaired Class, and Holders of Class 2(f) Claims are entitled to vote to accept or reject the Plan.

8.     <u>Class 3 – General Unsecured Claims</u>

(a)     *Allowance of General Unsecured Claims:* All General Unsecured Claims shall be determined and Allowed in accordance with the procedures set forth in Articles VII and VIII below.

(b)     *Treatment:*  Except to the extent that a Holder of an Allowed Class 3 Claim has been paid by the Debtor prior to the Effective Date, or agrees to alternate treatment, Allowed General Unsecured Claims shall receive a single Pro Rata distribution from the Equity Contribution or the payment received by the Debtor from the Winning Bidder in the Auction, after payment of all Allowed Administrative Claims (subject to Article II.A.3 with respect to SNS's claims under the DIP Loan Facility) in a single payment.  The Reorganized Debtor shall distribute such sums as soon as reasonably practicable after the Effective Date.

(c)     *Voting:* Class 3 is an Impaired Class, and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

9.        Class 4 –Warranty Claims

(a)    *Classification:* Class 4 consists of the Warranty Claims.

(b)    *Treatment:*  The Holders of Warranty Claims, regardless of whether they have filed Proofs of Claim, shall be entitled to all of the rights to which they are entitled in respect of their warranty as if no bankruptcy had intervened, except, however, that the term of the warranty shall end exactly 365 days earlier than the term shall otherwise have ended.

(c)    *Voting:* Class 4 is an Impaired Class, and Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

10.       Class 5 – Claims of Sierra Nevada Solar, Inc.

(a)    *Classification:* Class 5 consists of all of SNS's claims against the Debtor, except for its claims under the DIP Loan Facility.

(b)    *Treatment:*  Subject to Articles V.A and V.B, in satisfaction of the Class 5 Claims and in consideration of the Equity Contribution, 100% of the New Equity Interests in the Reorganized Debtor shall be issued to SNS.  If SNS is not the Winning Bidder for the New Equity Interests, its Class 5 Claim shall be  deemed to be unsecured and shall be afforded the same treatment received by general unsecured creditors in Class 3.

(c)    *Voting:* Class 5 is an Impaired Class, and Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

11.       Class 6 – Equity Interests in the Debtor.

(a)    *Classification*: Class 6 consists of all Equity Interests.

(b)    *Treatment*:  On the Effective Date, the Debtor's Equity Interests shall be cancelled. Holders of Equity Interests in the Debtor shall receive nothing.

(c)    *Voting*: Since they are receiving nothing, the Holders of Class 6 Equity Interests are deemed to have rejected the Plan. They are not entitled to vote to accept or reject the Plan.

C.    *Discharge of Claims*

Pursuant to section 1141(c) of the Bankruptcy Code, all Claims and Equity Interests that are not expressly provided for and preserved herein shall be extinguished upon Confirmation.  Upon Confirmation, the Debtor and all property dealt with herein shall be free and clear of all such claims and interests, including, without limitation, liens, security interests and any and all other encumbrances.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.    *Presumed Acceptance of Plan*

Class 1 claims are Unimpaired and are presumed to have accepted the Plan.

13

B.    *Voting Classes*

Classes 2, 3, 4, 5 and 6 are Impaired Classes under the Plan and Classes 2, 3, 4 and 5 shall be entitled to vote to accept or reject the Plan.

C.    *Acceptance by Impaired Classes of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

D.    *Cramdown*

The Debtor requests Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan in accordance with Article XIII.B hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

E.    *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**ARTICLE V.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *Restructuring Transactions.*

1.    <u>SNS Shall Make the Equity Contribution</u>

As its principal restructuring transaction and subject to the Auction, the Debtor or Reorganized Debtor, as appropriate, shall issue the New Equity Interests to SNS in exchange for an Equity Contribution equal to $150,000 and in satisfaction of SNS's Class 5 Claims.  Specifically, the Debtor shall take, or cause the Reorganized Debtor to take, the following actions to maximize the return to creditors (collectively, the "**Restructuring Transactions**"):

1.    The Debtor shall distribute the $150,000 received from SNS to Allowed Unsecured and Administrative Claims under the Plan in accordance with Article VII and Article VIII (except the DIP Loan Facility Claims, which shall be paid in accordance with Article II, Section A.3);
2.    The Reorganized Debtor shall satisfy the Allowed Priority and Secured Claims against the Estate, as set forth in the Plan; and
3.    The Reorganized Debtor shall honor the Assumed Executory Contracts and Unexpired Leases, and the Warranty Claims in Class 4, as set forth in Article III.

**THE ISSUANCE OF THE NEW EQUITY INTERESTS SHALL BE SUBJECT TO COMPETITIVE BIDDING AS SET FORTH BELOW, SHOULD ANY PARTY OTHER THAN SNS ELECT TO PURSUE THE PURCHASE OF THE NEW EQUITY INTERESTS.**

Pursuant to the Plan, and as the Debtor's principal Restructuring Transaction, the Debtor seeks to sell its equity in conjunction with the Plan Confirmation process.  Any proposed transaction respecting the sale of the Debtor's New Equity Interests is subject to the prior approval of the Bankruptcy Court.  Persons interested in

14

acquiring some or all of the New Equity Interests of the Debtor must submit a Qualifying Bid (as defined herein) to the Debtor's counsel by 5:00 p.m., Prevailing Pacific Time, at least fourteen (14) Days prior to the Confirmation Hearing (the "**Initial Bid Deadline**"), unless such date is extended in the sole discretion of the Debtor.  The Confirmation Hearing will also serve as the hearing to approve the sale of the New Equity Interests (the "**Sale Hearing**").  The transactions to be implemented pursuant to the Plan are subject to a determination of the Debtor of which Entity or Entities, if any, has submitted the highest and best bid for the Assets.

A bid received by the Debtor for the New Equity Interests shall constitute a "**Qualifying Bid**" if such bid includes the following, in form and substance reasonably satisfactory to the Debtor:  (i) a fully executed definitive purchase agreement for the New Equity Interests which sets forth all material terms and conditions of the proposed acquisition including, without limitation, the New Equity Interests to be acquired, liabilities to be assumed and proposed consideration to be paid by the bidder, and such other terms as the bidder deems appropriate  (the "**Definitive Agreement**"), (ii) evidence that the bidder has the necessary authorizations and approvals necessary to engage in the transaction without the consent of any entity that has not already been obtained; (iii) a cashier's check or wire transfer  made payable to the Debtor's counsel in an amount equal to $75,000 (the "**Deposit**") and (iv) such other information as the bidder believes will be helpful in demonstrating its financial capability to consummate the proposed transactions.  Additionally, in order to constitute a "Qualifying Bid", (i) the transaction proposed by the Definitive Agreement may not be conditioned on the outcome of unperformed due diligence and (ii) the Definitive Agreement must describe the bidder's intention with respect to Executory Contracts and/or Unexpired Leases of the Debtor in order for the assumption, assignment and/or rejection of such Executory Contracts and Unexpired Leases to be timely effectuated under the Plan.  Finally, in order to be deemed a "Qualifying Bid" the Definitive Agreement must be accompanied by a letter affirmatively: (i) setting forth a full disclosure of the identity of the bidder (and any other person(s) subject to any agreement, arrangement or understanding with such bidder in connection with the bid), the contact information for such bidder and full disclosure of any affiliates or insiders of the Debtor involved in such bid; (ii) stating that the bidder is prepared to purchase the business operations and New Equity Interests upon the terms and conditions set forth its Definitive Agreement; (iii) summarizing the consideration proposed under the Definitive Agreement (i.e., cash and assumed liabilities, repayment of the DIP Loan Facility and the SNS Secured Claim in Class 5); (iv) stating the aggregate value of the proposed consideration (which statement of value shall not be binding on the Debtor or the Bankruptcy Court); and (v) stating the form of Deposit (i.e., cashier's check or cash) made by the bidder.

Each Definitive Purchase Agreement shall provide for: (i) the allocation of certain expenses in connection with the purchase of the Debtor's New Equity Interests, including but not limited to real estate taxes, real property transfer taxes, recording and title fees, title insurance costs and other similar expenses, and whether such expenses shall be paid by the Purchaser or Debtor, including the DIP Loan Facility, and the effect any bid may have on the return to creditors generally.  The Debtor shall consider the allocation of these expenses and the returns to creditors when considering which bid is the highest and best offer.  Each Definitive Purchase Agreement, including the allocation of expenses associated with the transaction shall be subject to approval by the Bankruptcy Court.

Within two (2) Business Days of each bidder's timely delivery of all required materials as detailed in the preceding paragraph, the Debtor shall notify each bidder, in writing, as to whether its bid has been deemed a Qualified Bid in accordance with bidding requirements listed herein.  Each bidder who submits a Qualified Bid shall be deemed a "Qualified Bidder".  As indicated above, SNS's initial bid shall consist of: (i) the contribution of its prepetition secured and unsecured debt to the debtor; (ii) the extension of the repayment terms of the DIP Loan Facility; and (iii) $150,000.00 of cash.

The Confirmation Hearing shall also serve as an auction (the "**Auction**"), whereby Qualified Bidders may submit subsequent bids for the New Equity Interests, provided (i) that the initial bid at the Auction must exceed the cash component of the SNS bid by at least $75,000.00, (ii) each subsequent bid at the Auction must exceed the previous bid by at least $25,000.00 (the "**Bidding Increment**"), and (iii) any Qualified Bidder which submits a subsequent bid at the Confirmation Hearing in excess of its Qualifying Bid must provide evidence that it has the financial capability to purchase the New Equity Interests at the new, higher purchase price as set forth in its subsequent bid.  At the conclusion of Auction, the Bankruptcy Court (i) shall determine which bid constitutes the highest and best offer and which bidder constitutes the winning bidder (respectively, the "**Winning Bid**" and the "**Winning Bidder**") and (ii) approve the Winning Bid at the Sale Hearing.  In the event SNS is not the Winning Bidder at the Auction, and subject to Bankruptcy Court approval, SNS shall be entitled to a break-up fee of

$20,000.00, and expense reimbursement of up to $10,000.00 as an administrative expense, in addition to all of its other rights and remedies.

Promptly after the entry by the Bankruptcy Court of its order approving the sale of the New Equity Interests, which may be the Confirmation Order, the Deposits submitted by all Qualified Bidders (other than the bid of the Winning Bidder(s)) shall be returned to the respective Qualified Bidders. The Deposit(s) of the Winning Bidder(s) shall be applied to the Cash portion of the purchase price set forth in the Winning Bidder's Definitive Agreement, as may be modified by the Winning Bid. If a Winning Bidder fails to consummate the purchase contemplated under its Definitive Agreement, as may be modified by the Winning Bid, and (i) such failure is the result of the Winning Bidder's breach of its Definitive Agreement and (ii) the Debtor has met all closing conditions of the Winning Bidder's Definitive Agreement, the Deposit of such Winning Bidder shall be forfeited to the Debtor. Notwithstanding this forfeiture, the Debtor specifically reserves the right to seek all available damages from any defaulting Winning Bidder.

Notwithstanding the foregoing, the Bankruptcy Court may hear any aspect of the proposed sale of the New Equity Interests, including, controversies relating to any bidders' due diligence and to challenge any determination made in connection therewith. In the event the Winning Bidder does not close on the purchase of the New Equity Interests as set forth in such Winning Bidder's Definitive Agreement, the Debtor shall next pursue a sale of the New Equity Interests to the subsequent highest Qualified Bidders, until such time as the New Equity Interests are sold.

The Effective Date of the Plan shall not occur until the Winning Bidder closes on the New Equity Interests and completes all obligations pursuant to the Definitive Purchase Agreement (as approved by the Bankruptcy Court) including payment of the purchase price to the Debtor.

2.    The Reorganized Debtor Shall Issue the New Equity

On the Effective Date, the Reorganized Debtor shall issue the New Equity Interests to SNS pursuant to the terms set forth in the Plan, or the Winning Bidder in the Auction. The New Equity Interests shall represent all of the Equity Interests in the Reorganized Debtor as of the Effective Date. The New Equity Interests to be issued to the SNS or the Winning Bidder will be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.

B.    Associated Transactions

SNS (or the Winning Bidder) and the Debtor shall be authorized to engage in such other actions and transactions as SNS (or the Winning Bidder) deems necessary or appropriate to consummate the provisions of this Plan, which may include one or more sales, mergers, consolidations, restructurings, conversions, dissolutions, transfers or liquidations. The actions to effect the transactions may include: (a) the execution and delivery of appropriate agreements or other documents of sale, merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state and federal law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and the transactions, and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state or federal law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state or federal law in connection with the transactions. In the event a transaction is a merger transaction, upon the consummation of such transaction, each party to such merger shall cease to exist as a separate corporate entity. Implementation of these transactions shall not affect the distributions under the Plan except to the extent otherwise set forth.

To the extent that any such transactions results in the assignment of any Executory Contract or Unexpired Lease assumed under the Plan to a party other than the Debtor which was originally a party to such Executory Contract or Unexpired Lease (including such Debtor as Reorganized Debtor), the Debtor shall follow the procedures in Article VI of the Plan for the assignment of such Executory Contracts and Unexpired Leases under section 365 of the Bankruptcy Code. The chairman of the board of directors, president, chief executive officer, chief financial

16

officer, any executive vice-president or senior vice-president, member or manager or any other appropriate officer of the Debtor, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of this Plan and the transactions. The secretary or assistant secretary of the appropriate Debtor and of a Reorganized Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date, and pursuant to the Plan, the Debtor and the Reorganized Debtor, as applicable, shall take any actions as may be necessary or appropriate to affect a restructuring of their businesses or the overall organizational structure of the Reorganized Debtor. The actions to effect the transactions may include, without limitation:

- the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree;
- the filing of appropriate certificates or articles of formation, reformation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and
- all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with the any transactions carried out in accordance with the terms of this Plan.

C.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, in consideration for the classification, distributions, releases and other benefits provided under the Plan, and as a result of arm's-length negotiations among the Debtor and its creditors, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

D.      *Continued Corporate Existence*

The Debtor shall continue to exist after the Effective Date as a corporate entity with all the powers of a corporation pursuant to laws of the State of Nevada and pursuant to the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, in such a manner as to increase the likelihood of preserving the Debtor's net operating losses for Federal tax purposes, except to the extent such certificate of incorporation or bylaws (or other formation documents) are amended by or in connection with the Plan or otherwise and, to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents. It is further anticipated that in connection with Section 1129(a)(5) of the Bankruptcy Code, Maurice Russo and his management team will continue to operate and manage the Debtor or Reorganized Debtor, as applicable, post-confirmation.

E.      *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in the Plan, in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of the Estate (including, without limitation, Causes of Action) and any property acquired by the Debtor pursuant to the Plan, shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges or other encumbrances. Except as may be provided in the Plan and any sale all or a portion of the Debtor's Assets, on and after the Effective Date, the Reorganized Debtor may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor shall pay the charges that they incur after the Effective Date for Retained Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Retained Professional fee applications) without application to the Bankruptcy Court.

F.      *Release of Liens, Claims and Equity Interests*

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII hereof, all liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate shall be fully released and discharged.

G.      *Certificate of Incorporation and Bylaws*

The certificates of incorporation and bylaws of the Debtor shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to SNS or the Winning Bidder and the Reorganized Debtor.  On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor shall file a new certificate of incorporation with the secretary of state (or equivalent state officer or entity), which, as required by section 1123(a)(6) of the Bankruptcy Code, shall prohibit the issuance of non-voting securities.  After the Effective Date, the Reorganized Debtor may file a new, or amend and restate its existing, certificate of incorporation, charter and other constituent documents as permitted by the relevant state corporate law.

H.      *Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes*

The Debtor or the Reorganized Debtor, as applicable, may take all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto.  The secretary and any assistant secretary of the Debtor shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtor shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers or partners of the Debtor, or the need for any approvals, authorizations, actions or consents.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan, including the issuance of New Equity Interests.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

1.      Assumption of Executory Contracts and Unexpired Leases

Except as otherwise set forth herein, each Executory Contract or Unexpired Lease shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease:

(a)     has been previously rejected by the Debtor by Final Order of the Bankruptcy Court;

18

(b)  has been rejected by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date;

(c)  is the subject of a motion to reject pending as of the Effective Date;

(d)  is listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" in the Plan Supplement; or

(e)  is otherwise rejected pursuant to the terms herein.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. The Debtor reserves the right to amend the schedule of Rejected Executory Contracts and Unexpired Leases at any time before the Effective Date.

2.  <u>Approval of Assumptions</u>

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions described in this Article VI pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption of such Executory Contract or Unexpired Lease will be deemed to have consented to such assumption. Each Executory Contract and Unexpired Lease assumed pursuant to this section or by any order of the Bankruptcy Court, which has not been assigned to a third party on or prior to the Effective Date, shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

3.  <u>Assignment of Executory Contracts or Unexpired Leases</u>

In the event of an assignment of an Executory Contract or Unexpired Lease, at least ten (10) days prior to the Confirmation Hearing, the Debtor shall serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption and assignment, which will: (a) list the applicable cure amount, if any; (b) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court, Additionally, the Debtor shall file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed cure amounts. Any applicable cure amounts shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assignment or any related cure amount must be filed, served and actually received by the Debtor, and its counsel, SF, at least five (5) days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease. The Confirmation Order shall constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assignment. If an objection to assignment or the Debtor's proposed cure amount is sustained by the Bankruptcy Court, the Reorganized Debtor in its sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming and assigning it.

4.    Rejection of Executory Contracts or Unexpired Leases

All Executory Contracts and Unexpired Leases listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" in the Plan Supplement shall be deemed rejected as of the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in this Article VI pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B.    *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against any Debtor or any Reorganized Debtor or their Estate and property, and the Debtor or the Reorganized Debtor and its Estate and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

C.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  At least ten (10) days prior to the Confirmation Hearing, the Debtor shall serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, which will: (1) list the applicable cure amount, if any; (2) describe the procedures for filing objections thereto; and (3) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtor shall file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assumed and the proposed cure amounts.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served and actually received by the Debtor, and its counsel, SF, at least five (5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such matters.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  If an objection to the Debtor's identified cure amount is sustained by the Bankruptcy Court, the Reorganized Debtor in its sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming it.

D.    *Contracts and Leases Entered Into After the Commencement Date*

Contracts and leases entered into after the Commencement Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, the Reorganized Debtor shall make initial interim distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as practicable after the Initial Distribution Date; *provided*, *however*, that payments on account of General Unsecured Claims that become Allowed Claims on or before the Effective Date may commence on the Effective Date.

B.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the first Periodic Distribution Date after the Disputed Claim becomes an Allowed Claim.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtor shall establish appropriate reserves for potential payment of such Claims, including with respect to Disputed Claims in Class 3.

C.      *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distributions

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Delivery of Distributions in General

Except as otherwise provided herein, the Debtor or the Reorganized Debtor, as applicable, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Debtor or the Reorganized Debtor, as applicable; and *provided further,* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.      Distributions by Distribution Agents

The Debtor and the Reorganized Debtor, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.  As a condition to serving as a Distribution Agent, a Distribution Agent must (a) affirm its obligation to facilitate the prompt distribution of any documents, (b) affirm its obligation to facilitate the prompt distribution of any recoveries

or distributions required hereunder and (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required hereunder that are to be distributed by such Distribution Agent.

The Distribution Agents, and their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives and principals (collectively, the "**Indemnified Parties**") shall be indemnified and held harmless by the Debtor and the Reorganized Debtor, to the fullest extent permitted by law for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of the Distribution Agents solely in their capacity as such; provided, however, that the Debtor and the Reorganized Debtor shall not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence, fraud or reckless, intentional or willful misconduct.  The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

4.    Minimum Distributions

Notwithstanding anything herein to the contrary, the Reorganized Debtor shall not be required to make distributions or payments of less than $10.00 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar or share of New Equity Interests under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar or share of New Membership Interests (up or down), with half dollars and half shares of New Equity Interests or less being rounded down.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim if: (a) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question is or has an economic value less than $5,000.00, unless such distribution is a final distribution; or (b) the amount to be distributed to the specific Holder of an Allowed Claim on such Periodic Distribution Date does not constitute a final distribution to such Holder and is or has an economic value less than $10.00, which shall be treated as an undeliverable distribution under Article VII.E.5 below.

5.    Undeliverable Distributions

(a)    Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtor (or its Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor (or their Distribution Agent) are notified in writing of such Holder's then current address, at which time all currently and due missed distributions shall be made to such Holder on the next Periodic Distribution Date.  Undeliverable distributions shall remain in the possession of the Reorganized Debtor, subject to Article VII.E.5(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

(b)    Failure to Claim Undeliverable Distributions

No later than 210 days after the Effective Date, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of undeliverable distributions.  This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case stays open.  Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtor of such Holder's then current address in accordance herewith within the latest of (i) one year after the Effective Date, (ii) 60 days after the attempted delivery of the undeliverable distribution and (iii) 180 days after the date such Claim becomes an Allowed Claim shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or their property.  In such cases, (i) any Cash held for distribution on account of Allowed Claims shall be redistributed

to Holders of Allowed Claims in the applicable Class on the next Periodic Distribution Date and (ii) any Cash held for distribution to other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto.  Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

(c)      Failure to Present Checks

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check.  In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, no later than 180 days after the issuance of such checks, the Reorganized Debtor shall File with the Bankruptcy Court a list of the Holders of any un-negotiated checks.  This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtor for as long as the Chapter 11 Case remains open.  Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued.  Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 240 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or its property.  In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtor, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

**D.      Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable liens and encumbrances.

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

**E.      Timing and Calculation of Amounts to Be Distributed**

On the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**F.      Setoffs**

The Debtor and the Reorganized Debtor may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the

23

amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, equity interests, rights and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such Holder, except as specifically provided herein.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

A.      *Resolution of Disputed Claims*

1.      Allowance of Claims

After the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.  All settled claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

2.      Prosecution of Objections to Claims

After the Confirmation Date the Debtor or the Reorganized Debtor, as applicable, shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; provided, however, this provision shall not apply to Fee Claims.  From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.  The Reorganized Debtor shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

3.      Claims Estimation

After the Confirmation Date the Debtor or the Reorganized Debtor, as applicable, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

4.      Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtor, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

5.    Deadline to File Objections to Claims

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

B.    *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtor or the Reorganized Debtor under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if (i) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (ii) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM AND PROOFS OF INTEREST FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS AND EQUITY INTERESTS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS AND EQUITY INTERESTS, UNLESS SUCH LATE PROOF OF CLAIM OR EQUITY INTEREST IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE.**

C.    *Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order.

B.    *Conditions Precedent to Consummation*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof.

1.    The Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be reasonably acceptable to the Debtor and SNS.

2.    The Confirmation Order shall have been entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtor.  The Confirmation Order shall provide that, among other things, the Debtor or the Reorganized Debtor, as appropriate, is authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts,

25

instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

3.    The Bankruptcy Court shall have entered an order authorizing the sale of the New Equity Interests, and the Winning Bidder shall have closed on its acquisition of the New Equity Interests.

4.    All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

5.    Debtor's aggregate revenues starting July 1, 2017, through the most recent month end preceding the month during which the Confirmation Order is entered shall have been 70% of the amounts set forth in the Budget for such months.

6.    There shall not have been occurred or become known to SNS any material adverse condition or material adverse change in or affecting the business, operations, properties, condition (financial or otherwise) or prospects of the Debtor since the Commencement Date.  The mere filing of the Bankruptcy Case cannot constitute such a material adverse condition or material adverse change, but events occurring during or as a result of the Bankruptcy Case can constitute such a material adverse condition or material adverse change.

C.    *Waiver of Conditions*

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the person or persons entitled to enforce such conditions without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.  If two persons are entitled to enforce a condition, then both such persons must waive the condition in order for the waiver to be effective.  The Debtor shall be entitled to enforce (and waive) the Conditions at Articles IX.B.1 (as to itself), 2, and 3.  SNS shall be entitled to enforce (and waive) the Conditions at Articles IX.B.1 (as to itself) and 2-9.

D.    *Application of Article IX to a Prevailing Bidder Other than SNS.*

Should a Person other than SNS be the prevailing bidder in the Auction, then that Person shall not succeed to the rights of SNS in this Article IX.

E.    *Effect of Non Occurrence of Conditions to Consummation*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Holders or any other Entity in any respect.

## ARTICLE X.

## SETTLEMENT, RELEASE AND RELATED PROVISIONS

A.    *Compromise and Settlement*

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all

26

Allowed Claims and their respective distributions and treatments hereunder are settled, compromised, terminated and released pursuant hereto.

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtor, its estate and all Holders of Claims and Equity Interests, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. The Confirmation Order shall approve the releases by all Entities of all such contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

In accordance with the provisions of this Plan, including Article VIII hereof, and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtor may, in its sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtor may, in its sole and absolute discretion, compromise and settle Causes of Action against other Entities.

B.     *Preservation of Rights of Action*

1.     Maintenance of Causes of Action

Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Reorganized Debtor shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Commencement Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case.

2.     Preservation of All Causes of Action Not Expressly Settled or Released

Unless a claim or Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtor expressly reserves such claim or Cause of Action for later adjudication by the Debtor or the Reorganized Debtor (including, without limitation, claims and Causes of Action not specifically identified or of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, or any other Final Order (including, without limitation, the Confirmation Order). In addition, the Debtor and the Reorganized Debtor expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

## ARTICLE XI.

## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS AND INTERCOMPANY INTERESTS IN THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan as legally permissible, including, without limitation, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4. resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, *provided* that the Reorganized Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7. enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8. resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

9. hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10. issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11. enforce Article X.A and Article X.B hereof;

12. enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13. resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

28

14. enter an order concluding the Chapter 11 Case.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

B.    *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.    *Revocation of Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Debtor revokes or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

D.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

E.    *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

F.    *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan.

G.      *Further Assurances*

The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

H.      *Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that the Debtor, the Reorganized Debtor or any affected Entity (as applicable) may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing.  Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

I.      *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by overnight mail to:

> HelioPower, Inc.
> Attn: Maurice Rousso
> 25747 Jefferson Avenue
> Murrieta, California 92562
>
> **with copies to**:
>
> Schwartz Flansburg PLLC
> Attn: Samuel A. Schwartz, Esq.
> 6623 Las Vegas Blvd. South
> Suite 300
> Las Vegas, Nevada 89119

J.      *Return of Security Deposits*

Unless the Debtor have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtor to any Person or Entity at any time after the Commencement Date shall be returned to the Reorganized Debtor within twenty (20) days after the Effective Date, without deduction or offset of any kind.

K.      *Filing of Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

L.      *Default*

Upon the Effective Date of the Plan, in the event the Debtor fails to timely perform any of the obligations set forth in the Plan, the applicable creditor or party-in-interest shall notify the Debtor and Debtor's counsel of the

default in writing in accordance with the notice provisions herein, after which the Debtor shall have: (i) thirty (30) calendar days from the date of the written notification to cure the default; or (ii) if the cure requires more than thirty (30) days, so long as the Debtor initiates steps to cure the default within thirty (30) days and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.  If the Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights it may have under the contract(s) between the parties and/or applicable state law, without further court order or proceeding being necessary.

Dated:   June 30, 2017

Respectfully submitted,

| | |
|---|---|
| HelioPower, Inc. | Schwartz Flansburg PLLC |
| By: /s/ Maurice Rousso | By:      /s/ Samuel A. Schwartz |
| Maurice Rousso | Samuel A. Schwartz, of the firm |
| Its: President | Attorneys for the Debtor |