Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
M. Michelle Nisce, Esq.
Nevada Bar No. 13552
Schwartz Flansburg PLLC
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | ) Case No.: 17-12099-ABL |
| | ) |
| HelioPower Inc., | ) Chapter 11 |
| | ) |
|            Debtor. | ) Confirmation Hearing Date: August 16, 2017 |
| | ) Confirmation Hearing Time: 1:30 p.m. |

STATE OF NEVADA     )
                         )   ss:
COUNTY OF CLARK    )

**DECLARATION OF MAURICE ROUSSO IN SUPPORT OF**
**CONFIRMATION OF THE DEBTOR'S CHAPTER 11 PLAN**

Maurice Rousso, as President and Director of HelioPower Inc., (the "**Debtor**"), being duly sworn, deposes and says:

1.     I am over the age of eighteen, mentally competent, and unless otherwise indicated, I have personal knowledge of the facts set forth herein.  I make this Declaration in support of confirmation of the Debtor's Plan of Reorganization for HelioPower Inc. under Chapter 11 of the United States Bankruptcy Code (the "**Plan**") and the auction for qualified bidders to acquire new equity interests of HelioPower Inc.

2.     Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of

4817-9544-1741, v. 1

relevant documents, and information supplied to me by the Debtor's various business and legal advisors.

3. The Debtor is in the solar power business and provides solar panel installation services and other solar power related services to residential and commercial customers in California.

4. In connection with the confirmation of the Debtor's Plan, I reviewed the Plan, Disclosure Statement for the Plan (the "**Disclosure Statement**"), Bid Procedures and all related exhibits. The statements in those documents are true and correct and represent what I believe is best for the Debtor's estate and its efforts to obtain highest and best bid in exchange for new equity interests of the Debtor.

5. As set forth in the Debtor's liquidation analysis attached to the Disclosure Statement as Exhibit C, the Debtor compared the potential liquidation value of the Debtor's assets to the potential value of the Debtor's assets under the Plan. The values assigned to the debtor's assets, executable contracts, receivables, machinery, equipment, vehicles, inventory and other items listed on the liquidation analysis are accurate values of the Debtor's assets. The values assigned to the Debtor's liabilities and potential administrative expenses are also accurate and a good faith estimate of the Debtor's administrative expenses in Chapter 7 and Chapter 11.

6. As reflected in the liquidation analysis, the value of the distributions provided to holders of allowed claims under the Plan would be much greater than under a hypothetical Chapter 7 liquidation, and as a result, the Debtor believes the Plan satisfies the "best interests" test.

7. At the outset of the Chapter 11 case, the Debtor obtained a debtor-in-possession financing loan from its parent company, Sierra Nevada Solar, Inc. ("**SNS**"), which allowed for the Debtor, among other things, to obtain up to $400,000 in post-petition financing from SNS. To the best of the Debtor's knowledge, the debtor-in-possession loan documents are true and accurate, and the

4817-9544-1741, v. 1

post-petition financing allowed the Debtor to continue operations to reach this stage in its Chapter 11 case.  The Debtor has now exhausted all of the post-petition financing from SNS, and accordingly, believes the best way to maximize value for creditors is to sell the Debtor's business assets and equity interests as a going concern.

8.    I reviewed the bid procedures in connection with the Plan and sale of the Debtor's assets, and believe those bid procedures allowed for sufficient marketing of the Debtor's assets to potentially interested parties in solar power industry.

9.    In connection with the Plan, I also reviewed the purchase offer of SNS for the Debtor's assets, as described in Article V, Section A in the Plan.  SNS is the parent company of the Debtor, and owns approximately 87% of the Debtor's equity.  The SNS offer for the Debtor's assets is the only offer the Debtor received in connection with the Plan and bid procedures, and represents what I believe to be the highest and best offer for the Debtor's assets, which will result in the highest possible recoveries to the Debtor's creditors under the Plan.

10.    In connection with the Debtor's Plan and marketing of assets, the Debtor reached out to various parties to see if they would be interested in submitting a bid in connection with the Debtor's Plan.  I spoke with Alan Lee, the CEO of Ecosalargy, who indicated he had a tepid interest in the Debtor's assets but did not wish to submit a bid in connection with the Chapter 11 case.  The Debtor also spoke with Todd Lindstrom of Enable Energy, who indicated that his company did not have any real interest.

11.    I am informed that my counsel, Samuel A. Schwartz, also spoke with several parties regarding the sale of the Debtor's assets in connection with the Plan.  Despite the Debtor's good faith marketing efforts, only SNS submitted a bid for the Debtor's assets.

4817-9544-1741, v. 1

12.     The Debtor proposed the Plan in good faith and not by any means forbidden by law. Consistent with the overriding purpose of Chapter 11 of the bankruptcy code, I believe the Plan enables holders of claims to realize the highest possible recoveries under the circumstances of the Debtor's Chapter 11 case.

13.     The Plan proposes to distribute the proceeds from the sale of the Debtor's assets in a fair and equitable manner in accordance with each creditor's allowed claims against the Debtor.  The Plan also provides for the treatment of all claims against the Debtor.  Accordingly, I believe that the payment of the proceeds proposed in the Debtor's Plan is proposed in good faith, feasible, fair and equitable.  Therefore, the Plan should be confirmed as it is in the best interests of the Debtor, its estate and its creditors.

14.     The Debtor has no retiree benefits, therefore the Plan does not provide for their continuance after the Effective Date.

15.     The Debtor does not have any domestic support obligations, such that Section 1129(a)(13) of the Bankruptcy Code applies in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 11th day of August, 2017.

/s/ Maurice Rousso
MAURICE ROUSSO,
President and Director of HelioPower Inc.

4817-9544-1741, v. 1